UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN | ) |
| | ) |
| *Plaintiff* | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) 05 – 10275 - NMG |
| DONALD RUMSFELD, *et al.* | ) |
| | ) 28 July; 2005 |
| *Defendants* | ) |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO
RULE 12 OF THE FED. R. CIV. PROC.

The Plaintiff — Richard Max Strahan —OPPOSES the Defendants "Federal Defendants

Motion to Dismiss" ("Motion to Dismiss"). Strahan maintains that —

1.  He alleged sufficient Article III standing in ¶ 11 of his verified complaint to bring the

    instant action by simply maintaining that he is an "avid whale watcher." The Supreme

    Court has ruled that mere recreational whale watching confers standing on an

    individual to bring an action enforcing statutory provisions whose "zones of interest"

    concern protection of whales in the wild. See *Japan Whaling Association v.*

    *American Cetacean Society*, 478 U.S. 221, 230, 106 S. Ct. 2860, 2866, 92 L. Ed. 2d

    166 (1986).

2.  On 6 June 2005 Strahan served on the Defendants another notice (2005 Notice)

    pursuant to the ESA's Section 11(g) citizen suit provision that once again notified

    them and the U. S. Navy that its vessel and military operations continue to routinely

    kill and injure listed species of endangered whales incidental to these activities in

    violation of the ESA's Section 9 prohibitions. Strahan again notified these parties that

he would commence a civil action in the immediate future against them to enjoin their said activities to prevent said future violations by the Defendants and the U. S. Navy. See Attached copy of the notice.

3. Strahan's 1996 Notice (1996 Notice) is still active and will continue to be active until Strahan claims otherwise. Notices of Intent issued pursuant to Section 11(g) of the ESA ("Notice") are meant to last as long as the challenged activity that is subject to them. Notices are not self-terminating. Notices are inherently directed at future expected violations of the Act by current and future activities of a prospective defendant. After a Notice is issued, a citizen attorney general can commence an action at anytime against a defendant as long as the defendant continues to conduct the activity that is the subject to a Notice and where the complaint alleges that its threat to take listed wildlife remains and still will continue into the future after the action is commenced. See attached notice.

4. Common law and statutory restrains on commencing a civil action seeking tort damages are not applicable to claims brought pursuant to the ESA's citizen suit provision. Only prospective injunctive relief is available under the ESA's Section 11(g) and hence past violations cannot serve as the basis of obtaining any possible relief. Past violations only serve an evidentiary value to demonstrate the possibility of future unlawful violations that requested injunctive relief seeks to prevent. Hence Notices are not time limited because they are not based on past violations but only focus on prospective future violations of the ESA Section 9 prohibitions on taking listed species of endangered wildlife.

5.    Strahan is authorized to bring his claims pursuant to the ESA's Section 7 by the provisions of the Administrative Procedures Act as these claims are based on the Defendants alleged failings to comply with their mandatory and non-discretionary duties under Section 7 of the ESA. The Supreme Court has ruled that the ESA's citizen suit provision — Section 11(g) –– does not authorize claims brought pursuant to Section 7 of the ESA but that the APA does give the Court jurisdiction to hear these said claims. See *Bennett v. Spear*, 520 U.S. 154, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997).

6.    Strahan's claims against the Defendants brought under Marine Mammal Protection Act are not authorized by the MMPA but by the APA and the ESA.

**The Defendants Motion to Dismiss Raise Knee Jerk and Unsubstantiated Claims**

The Defendants raise only three unsubstantiated claims against Strahan in their Motion to Dismiss that cannot be sustained —

1.    Strahan's Verified Complaint does not offer a substantial claim of standing

2.    The 1996 Notice of Intent that Strahan sent pursuant to 16 U. S. C. § 1540(g) to the Defendants cannot be used in 2005 to commence a civil action against the Defendants for claims of violation of the Endangered Species Act ("ESA").

3.    Strahan cannot bring claims against the Defendants for violating the take prohibitions of the Marine Mammal Protection Act.

The Defendants are completely wrong on all three claims and ignore defining case law.

**Strahan has Demonstrated the Requisite Article III Requirements for Standing Simply by Claiming in His Verified Complaint that He is "An Avid Whale Watcher"**

In his Verified Complaint Strahan states under the pains and penalties of perjury that —

> "Strahan has standing to bring the instant civil action owing to his extended history of researching and developing conservation plans for species of Endangered Whales. Strahan is an avid whale watcher. Courts have repeatedly found Strahan to have standing to act as a "citizen attorney general" and to bring civil actions under the ESA to enforce the take prohibitions of the ESA in order to protect listed species of Endangered Whales from unlawful takings in the Atlantic Ocean." *Id* at ¶ 11.

Strahan's claim that he an "avid whale watcher" with this fact with nothing more satisfies

the Article III injury in fact standard for Strahan to possess standing to commence the instant

action. . See *Japan Whaling Association v. American Cetacean Society*, 478 U.S. 221, 230, 106

S. Ct. 2860, 2866, 92 L. Ed. 2d 166 (1986) —

> "It appears that respondents are sufficiently "aggrieved" by the agency's action: under our decisions in *Sierra Club* v. *Morton*, 405 U.S. 727 (1972), and *United States* v. *SCRAP*, 412 U.S. 669 (1973), they undoubtedly have alleged a sufficient "injury in fact" in that the whale watching and studying of their members will be adversely affected by continued whale harvesting, and this type of injury is within the "zone of interests" protected by the Pelly and Packwood Amendments.

Similar to the plaintiffs in Japan Whaling Association, Strahan's ability to find and watch

whales along the Atlantic coastline is being adversely affected by the Defendants alleged killing

and injuring of whales from their vessel operations and training activities.

## Strahan's ESA Section 7 Claims Are Brought Under the Administrative Procedures Act And Do Not Require Any Prior Notice Being Sent to the Defendants

Strahan's Verified Complaints beings claims against the Defendants for violation of the

both the ESA's Section 9 prohibitions against taking listed wildlife and for violation of the

Defendants' mandatory and non-discretionary duties under Section 7 of the Act. The ESA

requires that any person intending to bring a claim under Section 9 must first meet the

notification requirement of the ESA's Section 11(g). This is not true of claims brought under the

ESA's Section 7. Any person can bring a claim against a federal agency under the ESA's Section

7 for failing to comply with its mandatory and non-discretionary duties under Section 7 without

notifying the agency. The Supreme Court has ruled that claims brought against federal

employees and their agencies under Section of the ESA constitute claims authorized by

Administrative Procedures Act for alleged violations by agency officials of mandatory and non-

discretionary duties imposed on them by statutes like the ESA. See *Bennett v. Spear*, 520 U.S.

154, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997). The Supreme Court ruled in its decision in

*Bennett* that —

> "Viewed in the context of the entire statute, § 1540(g)(1)(A)'s reference to any
> "violation" of the ESA cannot be interpreted to include the Secretary's
> maladministration of the Act. Petitioners' claims are not subject to judicial review
> under § 1540(g)(1)(A). ... The foregoing analysis establishes that the principal
> statute invoked by petitioners, the ESA, does authorize review of their § 1533
> claim, but does not support their claims based upon the Secretary's alleged failure
> to comply with § 1536. To complete our task, we must therefore inquire whether
> these § 1536 claims may nonetheless be brought under the Administrative
> Procedure Act, which authorizes a court to "set aside agency action, findings, and
> conclusions found to be ... arbitrary, capricious, an abuse of discretion, or
> otherwise not in accordance with law," 5 U. S. C. § 706." *Id.* at 174, 1167.

The *Bennett* court further rules at 175, 1167 that —

> "No one contends (and it would not be maintainable) that the causes of action
> against the Secretary set forth in the ESA's citizen-suit provision are exclusive,
> supplanting those provided by the APA. The APA, by its terms, provides a right
> to judicial review of all "final agency action for which there is no other adequate
> remedy in a court," 5 U. S. C. § 704, and applies universally "except to the extent
> that-- (1) statutes preclude judicial review; or (2) agency action is committed to
> agency discretion by law," § 701(a). Nothing in the ESA's citizen-suit provision
> expressly precludes review under the APA, nor do we detect anything in the
> statutory scheme suggesting a purpose to do so. And any contention that the
> relevant provision of 16 U. S. C. § 1536(a)(2) is discretionary would fly in the
> face of its text, which uses the imperative "shall." " *Id.*

Strahan's claims against the Defendants are based on the complete failing by the

Defendants to initiate required *formal* consultation with the national Marine Fisheries Service

pursuant to Section 7 of the ESA and for also completely failing to develop required

conservation plan for listed endangered species that interact with activities of the Defendants and

the U. S. Navy.

## Strahan's 1996 Notice of Intent Remains Active to the Present Day and Will Continue to Be Active in 2016 Because the Defendants Vessel and Training Operations Remain Unchanged as a Clear and Present Danger to Listed Species of Endangered Whales

Under the Section 11 of the ESA, a "citizen attorney general" may bring a civil action to enforce the Section 9 prohibitions against taking listed species of endangered wildlife. At least sixty days prior to commencing a civil action against anyone, the citizen attorney general must send a notice to his prospective defendant informing it of his claim of it being in violation of the Section 9 take prohibitions and describing the factual basis of that violation.

The Notice is not directed to past unlawful takings of a prospective defendant but to the expectation of future unlawful takings by it no matter how far into the future that may be. It could be twenty if that is as long as the prospective defendant keeps engaging in the challenged action. The only relief that a citizen attorney general can seek is prospective injunctive relief. No damages can be sought for past takings. So a past taking is not the basis of his claims against the prospective defendant. Any past taking is merely serves as evidence to the strong possibility that a future additional unlawful taking by the defendant is likely if not expected in the foreseeable future.

What the Notice is directed to is *not a past* unlawful taking but *an ongoing pattern* of conduct by the prospective defendant that has unlawfully taken listed species of endangered wildlife in the past and is expected to do so again repeatedly into the foreseeable future as long as that activity by the prospective defendant goes on and remains essentially the same. So a Notice has no inherent time limit to its effectiveness and remains in effect as long as the prospective defendant continue to conduct the activity causing the unlawful takings no matter how long into the future that may eventually be. If the complaint claims that the activity in question of the defendant is still ongoing twenty years after a Notice was sent to the defendants

than that Notice is clearly still active if the complaint alleges that the activity is essentially the same as it was twenty years ago, has been repeatedly taking listed

The Notice is not subject to common law or statutory limitations on tort claims because a past taking is not the basis of a Notice — just the possible expected future taking. In fact, no past taking is necessary to be even mentioned in a Notice. All the Notice needs to refer to is a likely prospective action that is expected to result in an unlawful taking of a listed species of endangered wildlife. So what is being obviously alleged in a Notice is that the prospective defendant is expected to act in the future in manner that is likely to result in the taking of a listed species in the foreseeable future from the time of the actual commencement of the action.

This is consistent with the statutory construction and recognized Congressional intent of the ESA.

### Count IV of the Verified Complaint Maintains a Claim Against the Defendants for Violation of the Permit Requirements of the Marine Mammal Protection Act (MMPA) that is Authorized Under the Administrative Procedures Act (APA)

Count V of the Verified Complaint maintains that the Defendants violated the permit requirements of Section 101 of the MMPA by failing to obtain the required permit to authorize otherwise prohibited takings. Strahan is not raising a legal claim against the Defendants for violating the take prohibitions of the MMPA. Instead he is claiming that the Defendant are violating a clearly imposed mandatory and non-discretionary duty on the Defendants to obtain the said required permits if their activities are taking species of protected whales. It is a factual allegation that they are based on the plain language of the text of the MMPA. But with such a legality initially maintained, the requested relief sought is authorized by the APA because federal employees have a mandated and non-discretionary duty to seek required permits to avoid unlawful takings.

Additionally the ESA itself under its Section 7 requires that the Defendants obtain MMPA Section 101 permits as part of its mandatory and non-discretionary duties pursuant to the consultation provisions of that section.

## Summary

Strahan has standing to bring the claims of his Verified complaint because he is an avid whale watcher as he stated in its ¶ 11 under the pain and penalty of perjury. The Court has jurisdiction to adjudicate all of Strahan's claims against the Defendants. Strahan's 1996 ESA Section 11(g) notice ("1996 Notice") to the Defendants is valid to the current day and into the future. Pursuant to the standard of review imposed by Rule 12 of the Fed. R. Civ. Proc., since Strahan's Verified Complaint factually alleges that the Defendants unlawful vessel operations and training activities are essentially the same in 2005 as they were in 1996 in regards to the killing and injuring of listed species of whales, the Court has no choice but to consider this factual claim to be true. As true, Strahan's 1996 Notice must be considered as still active as it notified the Defendants correctly that at some point in the future Strahan would bring an action to enjoin the Defendants ongoing vessel and training operations — which he has done. Otherwise Strahan's 2005 Notice gives the Court jurisdiction to continue the actions without the need of dismissal because it will become active by the time the Court has to rule on the Defendants' Motion to dismiss. Regardless, Strahan's ESA Section 7 claims are viable without any need to supply any Notice because ESA Section 7 claims are only authorized to be brought under the Administrative Procedures Act and not the ESA. Finally Strahan's MMPA claim in Count IV of his Verified Complaint was brought under the APA and not the MMPA as a failue of the defendants to comply with a mandatory and non-discretionary duty imposed by the MMPA and the ESA.

For the above reasons, Strahan asks the Court to DENY the Defendants' Motion to

Dismiss.

BY:

_____

Richard Max Strahan, Plaintiff
928 Dorchester Avenue, #5
Boston, MA 02125
617.233.3854

*Pro Se and Proud!*

## CERTIFICATION OF SERVICE

I hereby certify that a copy of this Opposition has been served IN HAND on the U. S. attorney's
office in Boston MA and VIA E-mail on 28 July 2005.

_____

Richard Strahan, Plaintiff

10

# GreenWorld

Suite 195
236 West Portal Avenue
San Francisco CA 94127

### Notice to Bring Suit Under the Endangered Species Act

TO:  Vern Clark, Admiral                     Donald Rumsfeld, Secretary
     Chief of Naval Operations               Department of Defense
     Department of the Navy                  1000 Defense Pentagon
     2000 Navy Pentagon                      Washington, D. C. 20350-1000
     Washington, D. C. 20350-2000

     Gordon England, Secretary
     Department of the Navy
     1000 Navy Pentagon
     Washington, D. C. 20301-1000

CC:  Carlos Gutierrez, Secretary             Assistant Administrator
     United States Department of Commerce    National Marine Fisheries Service
     14th and Constitution Avenue, N.W.      East-West Highway
     Washington, D.C. 20230                  Silver Spring, MD 20910

DATE:  3 June 2005

To the Above Named Parties:

This is a further notice, pursuant to 16 U. S. C. § 1540(g), of our continuing intent to bring suit against the above named parties and the U. S. Department of the Navy ("DON") for its *ongoing* violations of the Section 9 prohibitions of the *Endangered Species* Act through your taking of federally listed endangered species of marine wildlife incidentally to the operation of DON vessels and aircraft. The DON has repeatedly killed, injured, harassed and otherwise illegally taken through the operation of its vessels and aircraft from at least 1950 to the current time, Humpback Whales (*Megaptera novaeangliae*), Northern Right Whales (*Eubalaena glaicialis*), and other federally listed endangered species of whales and marine wildlife are currently — as in the past — being repeatedly killed, injured and otherwise taken in violation of the Section 9 prohibitions of the ESA from DON ships running these whales over, these ships and aircraft operating near these whales, these ships and aircraft operating sonar in the marine environment, and their deploying ordinance and propelled devices into the marine habitat of these endangered species of whales. The routine operation of DON ships and aircraft inherently and adversely modifies and destroys the marine habitat designated under the ESA as listed critical habitat for the Northern Right Whale. The vessel and aircraft operations of the Navy under your command are conducted in a negligent fashion that jeopardizes the continued survival of federally listed endangered species of marine wildlife and poses a constant and significant threat to repeatedly take these federally protected species today and into the foreseeable future.

In 1996 I first informed you of our intent to bring suit against you and the DON pursuant to 16 U. S. C. § 1540(g). As with the instant notice, that notice was not simply based on any one specific incident of a past violation by DON of an ESA Section 9 take prohibition in regards to a listed species of endangered whale. It was based on our assertion that ongoing DON ship and aircraft operations constitutes an inherant violation of the Section 9 take prohibitions of the ESA and constitutes an ongoing "killing machine" for listed species of wildlife. In 1996 it was foreseeable that the DON's ship and aircraft operations would continue to kill, injure and otherwise take listed species of endangered whales again and again in violation of the Section 9 take prohibitions of the ESA to the present time. The operation of ships and aircraft by DON in 2005 is essentially identical to its said operation in 1996 in regards to its continuing adverse impact on listed species of endangered whales. The DON's continuing negligent operation of ships and aircraft poses a continuing clear and present danger to listed species of endangered whale and a continual and repeating violation of the Section 9 take prohibitions of the ESA. The DON ship and aircraft operations have killed and injured at least two members of listed species of endangered whales each year from 1995 to the present. It will continue to do every year into the future unless it is stopped by a court's order. This was our claim in 1996 and it remains our claim to the present day.

Among recent incidents of takings of listed species of whales by DON ship and aircraft operations are the —

1.  Killing of a pregnant Northern Right Whale or other listed species of whale in November of 2004 off the Chesapeake Bay.

2.  Killing of a Northern Right Whale in Great South Channel in March of 2005 that eventually stranded on Monomoy Island in Chatham MA.

3.  Killing of Humpback Whales off the Pacific coast of the United States.

4.  Harassment and injuring of listed species of endangered whales on both coastlines of the United States by the use of sonar in U. S. coastal waters.

5.  Adverse modification and destruction of designated listed critical habitat of the Northern Right Whale on the Atlantic coastline.

Be advised that as with the original notice in 1996 this renewed notice remains in effect until it is explicitly retracted in writing and the commencement of any one single civil action will also not cancel it. Our current civil action against DON and you will not terminate this notice or the 1996 notice. We will commence as many civil actions as necessary to stop DON's ongoing said violations of the Section 9 take prohibitions of the ESA. I am willing to discuss this notice with you. You may contact me at the above address or at my e-mail address: esis@savespecies.com.

In Peace,

Richard Max Strahan
National Campaign Director

12

# GreenWorld, Inc

Suite 223
1085 Commonwealth Avenue
Boston, MA 02215

## Notice to Bring Suit Under the Endangered Species Act

TO:       Michael Brooda, Admiral
          Chief of Naval Operations
          Department of the Navy
          2000 Navy Pentagon
          Washington, D. C.  20350-2000

          John Dalton, Secretary
          Department of the Navy
          1000 Navy Pentagon
          Washington, D. C. 20301-1000

          William Perry, Secretary
          Department of Defense
          1000 Defense Pentagon
          Washington, D. C. 20350-1000

DATE: August 25, 1996

To the Above Named Parties:

This is a notice, pursuant to 16 U. S. C. § 1540(g), of our intent to bring suit against the above named parties and the U. S. Department of the Navy ("DON") for its ongoing violations of the prohibitions of the *Endangered Species* Act through your taking of federally listed endangered species of marine wildlife incidentally to the operation of naval vessels and aircraft. The DON has repeatedly killed, injured, disturbed and otherwise illegally taken, through the operation of its vessels and aircraft, Northern Right Whales (*Eubalaena glacialis*), and other federally listed endangered species of whales and marine wildlife. The vessel and aircraft operations of the Navy under the Navy's command are conducted in a fashion that jeopardizes to federally listed endangered and threatened species of marine wildlife and pose a constant and significant threat to repeatedly take these federally protected species.

In brining suit against the Navy I will most likely add the Navy, and its officials, as defendants in my already ongoing litigation against the Coast Guard U. S. district court in Boston MA, *Strahan v. Linnon* 94 - CV - 11128.

In addition to the Navy's routine killing and injuring of listed species of endangered marine wildlife through the Navy's activities at sea, the Navy have also violated its non-

discretionary and mandated duties under Section 7 of the ESA. The Navy has completely failed to develop and implement any effective conservation program to reduce or eliminate the killings and injuring of whales from its activities at sea. The Navy has failed to enter the required consultation, pursuant to the provisions of Section 7 of the ESA, with the National Marine Fisheries Service over most of the Navy's activities at sea and also actions that the Navy has taken, funded, and authorized in logistic and facility support of these activities. Moat of these activities have taken listed endangered species of marine wildlife and inherently threaten to take many more in the future.

A partial list of instances where listed endangered species of marine wildlife have and are being killed or injured by Naval activities at sea or where the Navy failed in its non-discretionary and mandatory duty to consult with NMFS over the Navy's activities includes —

1.     Naval vessel and aircraft operations which routinely result in listed species of endangered marine wildlife being struck and disturbed by Naval vessels, and either being killed, injured, harmed, and/or harassed as a result;

2.     The dredging of shipping channels into Naval port facilities, especially the ongoing dredging operation for the shipping channel at the Navy's Trident Submarine base at King's Bay, GA.

3.     The Nay's conducting training exercises just outside of listed designated critical habitat for the Northern Right Whale, along the GA/FL border, during the winter birthing season, killed 8 Northern Right Whale mothers and calves, injuring others, and possibly irreparably depletion the species to cause their imminent extinction.

Be advised, in addition to being violations of the provisions of the ESA, that the above referenced activities also violate numerous other federal statutes and regulations, including the marine Mammal Protection Act and the National Environmental Policy Act. When we commence litigation for its accumulated violation under the ESA, we will also bring suit against the Navy for its accumulated violations under the MMPA and NEPA also.

To avoid litigation in the next few weeks, you and the Navy must —

1.     Apply to NMFS for an "incidental take permit, pursuant to the Section 10 provisions of the ESA, and/or enter into formal consultation with NMFS, under the provisions of Section 7(a) of the ESA; over the Navy's operation of aircraft and vessels in U. S. coastal waters (including dredging operations) and their impact on listed species of endangered marine mammals;

2.     Commence an Environmental Assessment over the impact of the Navy's vessel and aircraft operation on marine wildlife (including dredging operations);

3.     Apply to NMFS for a "small take permit," pursuant to the provisions of Section 101(a) of the MMPA, over the incidental taking by Navy vessel and aircraft operations (including dredging operations)) of marine mammals;

If the Navy does not comply with this request, we will file suit in a U. S. district court and seek injunctive and compensatory relief for the irreparable damage done by the Navy to our ability to enjoy the marine environment and the endangered, and otherwise protected, wildlife that lives within and withon it. I will also seek compensatory damages for the Navy's violation of my civil rights created by federal wildlife statutes to enjoy and interact with the life in the Ocean.

## Petition for the Navy to Perform Certain Acts For Which You Have Been Given The Authority To Do

I, and the environmental cooperative GreenWorld, hereby petition the above named parties and the Navy, pursuant to the provisions of the Constitution and the Administrative Procedures Act, to enact and take the following steps and measures —

1.      To apply to NMFS for and receive an "incidental take permit, pursuant to the Section 10 provisions of the ESA, and/or enter into formal consultation with NMFS, under the provisions of Section 7(a) of the ESA; over the Navy's operation of aircraft and vessels in U. S. coastal waters and their impact on listed species of endangered marine mammals;

2.      To commence an Environmental Assessment over the impact of the Navy's vessel and aircraft operation on marine wildlife and then to prepare and Environmental Impact Statement on the impact of the Navy's vessel and aircraft activity in U. S. coastal waters on marine wildlife;

3.      To apply to NMFS for and receive a "small take permit," pursuant to the provisions of Section 101(a) of the MMPA, over the incidental taking by Navy vessel and aircraft operations of marine mammals in U. S. coastal waters;

These requests include dredging operations undertaken to open channels for Navy ships.

I request that the Navy notify me in writing upon the receipt of this petition and inform me of its decision on my petitioned for actions within thirty days of the receipt of my petition.

If I do not have a written response from the Navy within thirty days, I will consider its failure to respond a failure to act timely on my requests and a de facto denial of them. I then will immediately commence litigation for its failure to respond to this petition in a timely manner and for its improperly withholding an agency action.

I await your reply.

In Peace

Richard Max Strahan
National Campaign Director
and for Hisself